IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| BRUCE R. MERRYMAN | § | |
| VS. | § | CIVIL ACTION NO. 1:20-cv-392 |
| LORIE DAVIS, ET AL. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Bruce R. Merryman, an inmate confined at the LeBlanc Unit of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983 against Lorie Davis,[1] Aaron Thompkins, and Lieutenant Brown.[2]

The action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Defendants filed a Motion to Dismiss (Doc. #71), and Plaintiff has filed a Response (Doc. #82). This Report and Recommendation considers the merits of the Motion to Dismiss.

Factual Background

Plaintiff states that he is at high risk for complications from COVID-19 due to underlying health conditions, including heart problems and anemia, and that the conditions of his confinement at the LeBlanc Unit increased his risk of exposure to COVID-19 at the time he filed this action.

---

[1] Defendant Davis is the former Director of TDCJ-CID. Plaintiff sued Defendant Davis in her individual capacity for damages, and in her official capacity for injunctive relief. Bobby Lumpkin is the current Director of TDCJ-CID. With respect to any claims for injunctive relief, Mr. Lumpkin is automatically substituted as a party. Defendant Davis remains a defendant to the extent that she is sued in her individual capacity for damages.

[2] The magistrate judge previously recommended dismissing the claims against Lieutenant Brown.

Plaintiff alleges the LeBlanc Unit is overcrowded and understaffed. As a result of the alleged overcrowding, Plaintiff is housed in a dormitory with sixty-seven other inmates, and the inmates sleep in bunks that are no more than 28 inches apart. Plaintiff contends TDCJ enacted safety regulations, including proper sanitation practices and the mandatory use of face masks for staff members and inmates, but the regulations were not followed consistently. Plaintiff states that the inmates were each provided with five bars of soap weekly, which Plaintiff alleges was insufficient. Plaintiff alleges inmates were tested for COVID-19 from May 10, 2020, through May 16, 2020, but so many inmates tested positive that Defendant Davis did not send inmates the results of their tests. Plaintiff alleges that inmates who tested positive for COVID-19 were isolated in small groups in classrooms, and were unable to shower during their fourteen-day quarantine period. Plaintiff alleges the unit was placed on lockdown in an attempt to prevent the spread of COVID-19, but not all of the inmates stayed in their assigned dormitories, which facilitated the spread of the virus. During the two-month medical lockdown, Plaintiff alleges the inmates were served sack lunches for each meal. Plaintiff alleges they were served peanut butter and jelly sandwiches three times a day, and the sandwiches made up one half of their total daily caloric intake.

Plaintiff alleges the inmates from the LeBlanc Unit were evacuated to another facility on August 24, 2020, prior to a hurricane making landfall. According to Plaintiff, the inmates were forced to sit in a crowded bus, and then they were housed around the inmates from the other facility, which increased their risk of contracting COVID-19.

Finally, Plaintiff claims that correctional officers have brought contraband into the prison, including a substance called K-2. Plaintiff alleges inmates smoke the K-2, which affects Plaintiff's health.[3]

## Motion to Dismiss

Defendants moved to dismiss the action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants contend that Plaintiff lacks standing to challenge the conditions of his confinement at the LeBlanc Unit. Defendants claim they are entitled to qualified immunity and that Plaintiff has failed to state a claim upon which relief may be granted.[4]

## Standard of Review

Under Federal Rule of Civil Procedure 12(b)(1), the district court has the authority to dismiss an action for lack of subject matter jurisdiction based on: (1) the complaint alone, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). The court generally can decide disputed issues of material fact in order to determine whether or not it has jurisdiction. *Montez v. Dep't of the Navy*, 392 F.3d 147, 149 (3rd Cir. 2004).

Federal Rule of Civil Procedure 12(b)(6) permits the dismissal of a complaint if it fails to state a claim upon which relief may be granted. A complaint does not need detailed factual allegations, but the plaintiff must allege sufficient facts to show more than a speculative right to

---

[3] In his Original Complaint, Plaintiff raised claims concerning delayed medical treatment for his health conditions. Plaintiff filed an Amended Complaint (Doc. #28), in which he asserts that he does not wish to pursue those claims in this action.

[4] Defendants also assert their entitlement to Eleventh Amendment immunity to the extent that they are sued in their official capacities for damages. In his Response, Plaintiff clarified that he sued the defendants in their officials capacities because he seeks injunctive relief, not money damages.

relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal for failure to state a claim is appropriate if the complaint does not include enough facts to state a claim that is plausible on its face. *Id*. at 570. Conclusory allegations and a formulaic recitation of the elements of a cause of action will not suffice to prevent dismissal for failure to state a claim. *Id*. at 555. The plaintiff must plead facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## Analysis

Title 42 U.S.C. § 1983 creates a cause of action against any person who, while acting under color of state law, causes a person to be deprived of a federally-protected constitutional right. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Phillips v. Monroe Cnty.*, 311 F.3d 369, 373 (5th Cir. 2002). Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured . . . .

42 U.S.C. § 1983. In order to state a cause of action under § 1983, a plaintiff must allege two elements. "First, the Plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez*, 446 U.S. at 640.

### I. Standing

Prior to considering the merits of a legal claim, the court must determine whether the litigant seeking to invoke the court's jurisdiction has standing to prosecute the claim. The jurisdiction of a federal court may only be invoked when a litigant has suffered some threatened or actual injury as

a result of a putatively unconstitutional action. The judicial powers given to federal courts under Article III of the United States Constitution exist only to redress or otherwise protect against injury to a complaining party. *Warth v. Seldin*, 422 U.S. 490 (1975). In order to have standing to bring a claim in a federal court, the litigant must allege actual or threatened "injury in fact, economic or otherwise." *Ass'n of Data Processing Orgs. v. Camp*, 397 U.S. 150, 152 (1970). "Standing defies precise definition, but at the least insists that the complained of injury be real and immediate rather than conjectural, that the injury be traceable to the defendant's allegedly unlawful conduct, and that relief from the injury must be likely to follow from a favorable ruling." *Society of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992).

Defendants contend that the court lacks subject matter jurisdiction because Plaintiff, who had not contracted COVID-19 at the time this action was filed, does not have standing to pursue his Eighth Amendment claim. This argument lacks merit because Plaintiff's allegation that he faces an increased risk of contracting COVID-19 as a result of Defendants' actions is sufficient to establish standing. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (noting that an allegation of future harm is sufficient to establish standing if there is a substantial risk that the harm will occur). As a result, Plaintiff has standing to raise claims concerning the conditions of confinement that personally affected him. However, Plaintiff has failed to allege any facts that would allow him to bring claims on behalf of other inmates, such as the claims concerning quarantine conditions for inmates who tested positive or the failure to provide test results to those inmates who tested positive. *See Warth*, 422 U.S. at 490 (noting that litigants generally must assert their own legal rights and interests). Those claims must be dismissed for lack of standing.

*II. Personal Involvement*

To successfully plead a cause of action in a civil rights case, Plaintiff must enunciate a set of facts that illustrate the defendants' participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Plaintiff does not allege facts demonstrating that Defendants were personally involved in the events that resulted in Plaintiff being exposed to K-2 smoke. It appears that Plaintiff is suing them because of their supervisory positions over the correctional officers who allegedly smuggled the substance into the prison.

Under § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). A supervisor may be held liable only for implementing a policy that repudiates constitutional rights and the policy is the moving force of the constitutional violation. *Id*. Accepting Plaintiff's allegations as true, there is no basis to hold Defendant Davis or Defendant Thompkins liable in a supervisory capacity because Plaintiff does not allege that either Defendant implemented a constitutionally-deficient policy that resulted in Plaintiff's injuries.

*III. Qualified Immunity*

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is intended to protect all officials, except those who are plainly incompetent or who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Federal courts use a two-part test to determine whether the defendants are entitled to qualified immunity. *Freeman v. Texas Dep't of Crim. Just.*,

369 F.3d 854, 863 (5th Cir. 2004). The first prong of the test requires the court to determine whether the plaintiff's allegations, if true, establish a constitutional violation. *Hope*, 536 U.S. at 736; *Freeman*, 369 F.3d at 863. If a constitutional right was violated, the court must decide whether the right was clearly established at the time of the violation. *Freeman*, 369 F.3d at 863. Clearly established rights should not be defined broadly. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Hope*, 536 U.S. at 739 (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The district court has discretion to decide which prong of the two-part test to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In this instance, the court will first determine whether Plaintiff has alleged facts establishing a violation of the Eighth Amendment.

*IV. Deliberate Indifference to Medical Needs*

Although the Eighth Amendment does not explicitly mandate a certain level of medical care for prisoners, the cruel and unusual punishment clause has been interpreted to impose a duty on prison officials to provide inmates with adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999). A prison official's deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, whether the indifference is manifested by prison doctors or by prison guards. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 754 (5th Cir. 2001).

An Eighth Amendment claim consists of two components--one objective and one subjective. *Farmer*, 511 U.S. at 839. To satisfy the objective requirement, Plaintiff must prove that he was exposed to a substantial risk of serious harm. *Id.* at 834; *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002). Plaintiff must also demonstrate that the defendants were deliberately indifferent to that risk. *See Farmer*, 511 U.S. at 834; *Lawson*, 286 F.3d at 262. The deliberate indifference standard is a subjective inquiry; Plaintiff must establish that the defendants were aware of an excessive risk to Plaintiff's health or safety, and yet consciously disregarded the risk. *Farmer*, 511 U.S. at 840-41; *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002); *Stewart*, 174 F.3d at 534.

Mere negligence, neglect, or medical malpractice does not rise to the level of a constitutional violation. *Domino*, 239 F.3d at 756 ("It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference."); *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999) ("[A]llegations of malpractice or negligence will never state a claim under the Eighth Amendment."); *Stewart*, 174 F.3d at 534. Nor does an inmate's disagreement with his medical treatment amount to an Eighth Amendment violation. *Stewart*, 174 F.3d at 537; *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). "Rather, the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino*, 239 F.3d at 756 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Defendants do not dispute that COVID-19 presented a substantial risk of serious harm to Plaintiff. At issue in this case was whether the Defendants' response to the pandemic recklessly disregarded the risk.

The United States Court of Appeals for the Fifth Circuit had occasion to consider TDCJ's initial response to the pandemic in *Valentine v. Collier*, 993 F.3d 270 (5th Cir. 2021). The Fifth Circuit noted that TDCJ and Correctional Managed Health Care began discussions regarding COVID-19 in February of 2020. *Valentine*, 993 F.3d at 278. On March 20, 2020, a comprehensive, facility-wide policy was adopted. *Id*. The policy generally tracked the CDC's recommendations for detention centers, and it was thereafter frequently updated and revised. *Id*. Testing for symptomatic inmates became available in March, and mass testing, which followed the CDC's recommendations for mass testing in nursing homes, began in May of 2020. *Id*. The policy had instructions for isolating and quarantining inmates who tested positive and those who were suspected of being infected with the virus. *Id*. After considering the evidence regarding the promulgation of the policy for responding to COVID-19 and the subsequent revisions to the policy, the Fifth Circuit found that the evidence did not support a finding that supervisory officials were deliberately indifferent in adopting those policies. *Id*. at 284. While noting that TDCJ's response to COVID-19 was imperfect, the Fifth Circuit found that the policy required inmates to be given clean masks daily, required inmates and staff to wear masks, provided cleaning solution for individual cubicles, and installed electrostatic sprayers and handwashing stations. *Id*. at 288. The Fifth Circuit also noted that "the layout of bunks in the dorms and the cubicles around them could not be readily changed to facilitate social distancing." *Id*. The Fifth Circuit concluded that injunctive relief was not warranted because the evidence did not show that the defendants were deliberately indifferent in their implementation of the policy. *Id*. at 288-89.

In this case, Defendants are correct that Plaintiff's allegations are insufficient to show that they were deliberately indifferent to Plaintiff's serious medical needs in enacting policies with regard

to COVID-19. To the extent that Plaintiff contends that individual correctional officers and inmates did not comply with the policies, Plaintiff has not alleged facts demonstrating that Defendants are responsible in their supervisory capacities for the actions of their subordinates. Plaintiff's allegations do not support a conclusion that Defendants deliberately disregarded the risk of harm posed to Plaintiff by exposure to COVID-19. As a result, Defendants are entitled to qualified immunity.

Finally, Plaintiff complains that he was served sack lunches for each meal during the time the LeBlanc Unit was on medical lockdown. Plaintiff stated that each meal included a peanut butter and jelly sandwich. Although the inmates were provided with food in addition to the sandwiches, the peanut butter and jelly sandwiches accounted for one half of the daily calories provided to him. The Eighth Amendment requires that inmates be provided with reasonably adequate food. *Newman v. Alabama*, 559 F.2d 283, 291 (5th Cir. 1977). The meals must be well-balanced and contain sufficient nutritional value to preserve health. *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986); *Smith v. Sullivan*, 553 F.2d 373, 291 (5th Cir. 1977). In this case, although the meals lacked variety, Plaintiff has not sufficiently alleged that they had insufficient nutritional value. As a result, Plaintiff has not stated a claim upon which relief may be granted.

## Recommendation

Defendants' Motion to Dismiss should be granted.

## Objections

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

**SIGNED this the 7th day of September, 2022.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE